**In re CARDINAL INDUSTRIES, INC., Jointly Administered With Cardinal Partner Corporation (Jupiter Cove Apartments)**

**and**

**Sugartree Apartments II, Ltd., Thymewood Apartments, Ltd., Bel Aire Apartments II, Ltd., Bel Aire Apartments, Ltd., Centre Lake Apartments, Ltd., Centre Lake Apartments, II Ltd., Blossom Corners Apartments II, Ltd., Crystal Court Apartments II, Ltd., Centre Lake Apartments III, Ltd., Blueberry Hill Apartments, Ltd., Oldswood Apartments, Ltd., Debtors.**

**Bankruptcy Nos. 2–89–02779, 2–89–07291, 2–90–01531, 2–90–01614, 2–90–01717, 2–90–01827 to 2–90–01829, 2–90–01836, 2–90–01963, 2–90–02096, 2–90–02108 and 2–90–03982.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 14, 1990.

See also, 116 B.R. 964.

David G. Korn, Columbus, Ohio, for Crystal Court Apartments II, Ltd. Sugartree Apartments II, Ltd., Centre Lake Apartments, Ltd., Centre Lake Apartments II Ltd., Centre Lake Apartments III, Ltd., Bel Aire Apartments, Ltd. and Bel Aire Apartments, II, Ltd.

Thomas L. Blackburn, Christine W. Schmenk, John Andrew Merkle, Denmead, Blackburn & Willard, Columbus, Ohio, for Thymewood Apartments, Ltd., Oldswood Apartments, Ltd. and Blossom Corners Apartments II, Ltd.

Victor S. Krupman, Columbus, Ohio, for Blueberry Hill Apartments, Ltd.

Hywel Leonard, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., and Don Gardner, Keating, Muething & Klekamp, Cincinnati, Ohio, for Florida Federal Sav. Bank.

Drew T. Parobek, Vorys, Sater, Seymour and Pease, Columbus, Ohio, for, Madison Sav. and Loan Ass'n.

Leonard A. Carlson, Schottenstein, Zox & Dunn, Columbus, Ohio, Attorneys for Amerifirst Bank.

Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, Ohio, for Home Federal, Sav. and Loan Ass'n.

Jay Alix, Southfield, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, Gen. Counsel to trustee.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio Special Counsel to trustee, and for Cardinal Retirement Management Group, Inc., Cardinal Acceptance Corp., Maxim Building Corp., Cardinal Advisory Group, Inc. and Columbus Const., Inc.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio Columbus Office of the United States Trustee, for Region IX.

Lori Lapin Jones, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, and Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors of Cardinal Industries, Inc.

P. Steven Kratsch, Kilpatrick & Cody, Atlanta, Ga., for the Official Committee of Unsecured Creditors of Cardinal Industries of Florida, Inc.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, for Cardinal Industries of Georgia, Inc., Cardinal Industries Mortg. Co. and Cardinal Parts Service Co.

James H. Bownas, Cardinal Industries, Inc., Columbus, Ohio.

Charles J. Taunt, Birmingham, Mich., for Cardinal Industries Services Corp., Cardinal Industries of Florida Services Corp., Cardinal Industries of Georgia Services Corp. and Cardinal Furniture Leasing Co.

Thomas R. Noland, Altick & Corwin, Dayton, Ohio for Cardinal Partnership Corp. and Cardinal Partner Corp.

Gary H. Cunningham, Schlussel, Lifton, Simon, Rands, Galvin & Jackier, Southfield, Mich., for Cardinal Lodging Group, Inc. and Cardinal Apartment Management Group, Inc.

Sara J. Daneman, Chester, Hoffman, Willcox & Saxbe, Columbus, Ohio for Cardinal Industries Development Corp.

## OPINION AND ORDER ON USAGE OF RENTS BY DEBTORS OPERATING UNDER FLORIDA ASSIGNMENTS OF RENTS

BARBARA J. SELLERS, Bankruptcy Judge.

These matters are before the Court upon motions filed by various debtors in the above-captioned cases seeking authority to use cash collateral or upon motions by lenders seeking to prohibit such usage. As each case involves identical issues of Florida law, the various motions and objections are being considered together.

The Court has jurisdiction in these matters pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. These are core proceedings which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A), (M) and (O). For reasons stated herein the Court determines that the rents are cash collateral which may be used by the various debtors if adequate protection is provided.

## I. FACTUAL BACKGROUND

A short factual background of each property is necessary and is presented chronologically according to the hearing date.

In Case No. 2–90–01827, debtor Bel Aire Apartments, Ltd. ("Bel Aire I"), is the owner of real property located in Miami, Florida, and known as Bel Aire Apartments. On March 15, 1985, Bel Aire I executed a promissory note in a principal amount of $1,600,000 payable to Cardinal Industries Mortgage Company ("CIMC"). Additionally, Bel Aire I granted CIMC a mortgage interest in the property along with an assignment of rents from the property. The mortgage and security agreement containing the assignment of rents clause were recorded on March 27, 1985. Subsequently, CIMC assigned its rights in the note, mortgage and assignment of rents to Amerifirst Bank N.A. ("Amerifirst"). Bel Aire I defaulted in payments on the note, and notice of this default was communicated by Amerifirst to Bel Aire I in May of 1989. On March 13, 1990, Amerifirst obtained a judgment of foreclosure against the property. On March 20, 1990 Bel Aire I filed its voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

In Case No. 2–90–01717, debtor Bel Aire Apartments II, Ltd. ("Bel Aire II") is the owner of real property located in Miami, Florida, and known as Bel Aire Apartments II. On August 1, 1985, Bel Aire II executed a promissory note in a principal amount of $1,350,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated August 1, 1985 and filed August 14, 1985. Subsequently, CIMC assigned its rights in and arising from these instruments to Amerifirst. Following Bel Aire II's default in May of 1989, Amerifirst sent a notice of default. Amerifirst obtained a judgment of foreclosure on February 22, 1990. Bel Aire II filed its voluntary petition in this Court for relief pursuant to Chapter 11 of the Bankruptcy Code on March 14, 1990.

The debtor in Case No. 2–90–01828, Centre Lake Apartments, Ltd. ("Centre I"), is the owner of real property located in Miami, Florida, and known as Centre Lake Apartments. On September 24, 1986, Centre I executed a promissory note in the principal amount of $1,920,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated September 24, 1986, and recorded October 22, 1986. Subsequently, CIMC assigned its rights in and arising from these instruments to Amerifirst. Following Centre I's default, Amerifirst sent a notice of default in May, 1989.

Amerifirst obtained a judgment of foreclosure on February 21, 1990. Centre I filed its voluntary petition in this Court for relief pursuant to Chapter 11 of the Bankruptcy Code on March 20, 1990.

Centre Lake Apartments II, Ltd. ("Centre II"), the debtor in Case No. 2–90–01829, is the owner of real property located in Miami, Florida, and known as Centre Lake Apartments II. On September 24, 1986, Centre II executed a promissory note in a principal amount of $1,948,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated September 24, 1986 and recorded October 22, 1986. Subsequently, CIMC assigned its rights in and arising from these instruments to Amerifirst. Centre II defaulted on the note, and Amerifirst sent notice of this default in May, 1989. Amerifirst obtained a judgment of foreclosure on March 13, 1990. Centre II filed its voluntary petition in this Court for relief pursuant to Chapter 11 of the Bankruptcy Code on March 20, 1990.

The debtor in Case No. 2–90–02096, Centre Lake Apartments III, Ltd. ("Centre III"), is the owner of real property located in Miami, Florida, and known as Centre Lake Apartments III. On September 24, 1986, Centre III executed a promissory note in the principal amount of $2,960,000 in favor of CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated September 24, 1986 and recorded October 22, 1986. Subsequently, CIMC assigned its rights in and arising from these instruments to Amerifirst. Following Centre III's default, Amerifirst sent Centre III notice of this default in May, 1989. Amerifirst obtained a judgment of foreclosure on March 2, 1990. On March 28, 1990, Centre III filed its voluntary petition in this Court pursuant to Chapter 11 of the Bankruptcy Code.

The debtor in Case No. 2–90–03982, Oldswood Apartments, Ltd. ("Oldswood"), is the owner of real property located in Oldsmar, Florida, and known as Oldswood Apartments. On April 22, 1988, Oldswood executed a promissory note in the principal amount of $1,112,400 payable to Madison Savings and Loan Association ("Madison"). This obligation was secured by a mortgage and an assignment of leases, rents and profits dated April 22, 1988. The assignment of leases, rents and profits reads in pertinent part:

AND TO THAT END the Owner hereby assigns to said Lender, all leases of said premises now made, or to be hereafter made, whether written or verbal, including specifically, without limiting the generality hereof, the following lease:

### All Tenant Leases

The Owner hereby authorizes and empowers the Lender to collect said rents, issues, profits, revenues, royalties, rights and benefits, as they shall become due, and hereby directs each tenant of the aforesaid premises to pay said rents now due or hereafter to become due to the said Lender upon demand for payment thereof by said Lender. However, no such demand shall be made unless and until there has been a default in the payment of the indebtedness secured by the mortgage herein mentioned, or default in the payment of any other sums secured by said mortgage and, until such demand is made, the Owner is authorized to collect, or continue collecting, said rents, issues, profits, revenues, royalties, rights and benefits; provided, such privilege shall not operate to permit the collection by the Owner of any installment of rent in advance of the date prescribed in said lease or leases for the payment thereof.

This assignment shall continue until the certain note and mortgage (or any extension or renewal thereof) of even date, made, executed and delivered by Oldswood Apartments, Ltd., a Florida limited partnership, to Madison Savings and Loan Association, covering the above-described premises for the sum of $1,112,400.00, shall have been fully paid and satisfied, and the satisfaction of said mortgage shall constitute a release hereof.

This assignment is given as additional security for the performance of each of

the obligations and covenants of the note and mortgage above-described (or any extension or renewal thereof), and the amounts collected hereunder, less the expense of collection, if any, shall be applied on account of taxes and assessments on said real estate, insurance premiums and delinquencies of principal and interest thereunder.

Oldswood defaulted in payments under its note and Madison, in May of 1989, sent Oldswood notice of this default. On June 12, 1990 Oldswood filed its voluntary petition with this Court pursuant to Chapter 11 of the Bankruptcy Code.

The debtor in Case No. 2–90–01836, Blossom Corners II, Ltd. ("Blossom II"), is the owner of real property located in Florida and known as Blossom Corners Apartments II. On December 22, 2981, Blossom II executed a promissory note in the principal amount of $1,165,000 payable to Amerifirst. This obligation was secured by a mortgage, assignment of rents and security agreement dated December 22, 1981. The assignment of rents states:

18. As additional security for the payment of the indebtedness herein described and the performance of the covenants herein contained, Mortgagor hereby assigns to Mortgagee all the rents, income and profits due and to become due under leases of the premises made both before and after the date hereof, Mortgagor reserving possession and the right to collect such rents, income and profit only so long as no default exists in the payment of the indebtedness secured hereby or in the performance of the covenants and agreements herein contained. In the event of such a default, Mortgagee shall have the right to possession and to collect all the rents, income and profits and Mortgagor herewith directs any lessee, tenant, statutory trustee, or other person in possession thereof to pay and deliver same to Mortgagee, herewith granting and releasing to Mortgagee all right to retain possession and to collect such rents, income and profits in such event. This Assignment shall become null and void upon the release of this mortgage.

Following Blossom II's default, Amerifirst sent notice to Blossom II prior to the initiation of state foreclosure proceedings. Blossom II filed its voluntary petition in this Court on March 20, 1990 under Chapter 11 of the Bankruptcy Code.

The debtor in Case No. 2–90–01614, Thymewood Apartments Ltd ("Thymewood"), is the owner of real property located in Dade County, Florida, known as Thymewood Apartments. On December 5, 1984, Thymewood executed a promissory note in the principal amount of $2,500,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated December 5, 1984 and recorded December 21, 1984. Subsequently, CIMC assigned its rights in and arising from these instruments to Amerifirst. Following Thymewood's default, Amerifirst sent a notice of default in May, 1989. On March 12, 1990, Thymewood filed its voluntary petition in this Court for relief pursuant to Chapter 11 of the Bankruptcy Code.

The debtor in Case No. 2–90–02108, Blueberry Hill Apartments, Ltd. ("Blueberry"), is the owner of property located in Lake County, Florida, known as Blueberry Hill Apartments. On November 26, 1986, Blueberry executed a promissory note in the principal amount of $1,540,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated November 26, 1986 and recorded December 15, 1986. Subsequently, CIMC assigned its rights in and arising from these instruments to Florida Federal Savings Bank ("Florida Federal"). Blueberry defaulted on the note and Florida Federal demanded turnover of the rents in February, 1989. On May 17, 1989, a receiver for the property was appointed. On March 28, 1990 Blueberry filed its voluntary petition in this Court for relief pursuant to Chapter 11 of the Bankruptcy Code.

The debtor in Case No. 2–90–01963, Crystal Court Apartments II, Ltd. ("Crystal"), is the owner of real property located in Lakeland, Florida, known as Crystal Court Apartments II. On September 30, 1986, Crystal executed a promissory note in the

principal amount of $1,520,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated September 30, 1986. Subsequently, CIMC assigned its rights in and arising from these instruments to Home Federal Savings and Loan Association of San Diego California ("Home Federal"). Following Crystal's default, a receiver for the property was appointed on July 7, 1989. Crystal filed its voluntary petition in this Court on March 23, 1990 for relief under Chapter 11 of the Bankruptcy Code.

The debtor in Case No. 2–90–01531, Sugartree Apartments II, Ltd. ("Sugartree II"), is the owner of real property located in New Smyrna Beach, Florida, known as Sugartree Apartments II. On May 26, 1987 Sugartree II executed a promissory note in the principal amount of $1,200,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated May 26, 1987 and recorded June 2, 1987. Subsequently, CIMC assigned its rights in and arising from these instruments to Home Federal. Following Sugartree II's default and Home Federal's notice, a receiver was appointed for the property. On March 7, 1990, Sugartree II filed its voluntary petition in this Court for relief pursuant to Chapter 11 of the Bankruptcy Code.

The last of these motions, in Case No. 2–89–02779, relates to real property located in Palm Beach County, Florida, known as Jupiter Cove Apartments. On May 14, 1987 a partnership known as Jupiter Cove Apartments, Ltd. executed a promissory note in the principal amount of $1,845,000 payable to CIMC. This obligation was secured by a mortgage, assignment of rents and security agreement dated February 2, 1987. Subsequently, CIMC assigned its rights in and arising from these instruments to Home Federal. That property was transferred in 1988 to Cardinal Partner Corporation ("CPC"). Following a default in payments under the note, Home Federal gave notice of such default and a receiver was appointed for the property on September 5, 1989. CPC filed its voluntary petition in this Court on December 28, 1989 for relief under Chapter 11 of the Bankruptcy Code.

## II. THE RELIEF SOUGHT

The owners of the various properties (collectively "Debtors") seek to use the rents generated by their respective property to operate the property in the ordinary course of business. Where the motion is filed by the secured lender, it seeks to prohibit such usage. The secured lenders, Amerifirst, Home Federal, Madison and Florida Federal (collectively "Lenders") oppose such usage and contend that: (1) the assignments of rents gives them an absolute and unconditional interest in the rents and, therefore, the rents are not property of the various Debtors' estates; or; (2) if the rents are property of the Debtors' estates subject to a security interest, the Debtors cannot adequately protect the Lenders' interests in that cash collateral.

## III. ISSUES

The issues before this Court for determination are as follows:

1. What is the nature and extent of each Lender's interest in the rents generated from the property against which it holds an assignment of rents for which the statutory notice under Florida law has been given?

2. May the various Debtors use the rents generated by their properties and, if so, for what purposes and under what conditions?

## IV. DISCUSSION AND CONCLUSIONS OF LAW

A. *The Nature of the Lenders' Interests In The Rents*

This Court has previously decided the issue of the nature and extent of a secured lender's interest in rents generated by a Chapter 11 debtor's real property when there is a clause in an assignment of rents and security agreement which purports to be an "absolute assignment of rents." *See In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138 (Bankr.S. D.Ohio 1990). While *Willowood* involved

an interpretation of Indiana law and these cases require an examination of relevant Florida law, the same analytical approach will be utilized.

With the exception of the two assignment of rent clauses set forth previously in documents connected with Oldswood and Blossom II, the assignments to the remaining Lenders, which appear in paragraph 26 of each mortgage, state in pertinent part:

26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues, including all security deposits, of the Project, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Project, regardless of to whom the rents and revenues of the Project are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Project to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Project as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Project in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Project as specified in .this paragraph as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents....

\*     \*     \*     \*     \*     \*

... This assignment of rents shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

The Lenders contend that these provisions, coupled with the application of Fla. Stat. § 697.07 (1989), give them absolute ownership rights in their respective rents and exclude such rents from property of the respective bankruptcy estates pursuant to 11 U.S.C. § 541(a). Florida Stat. § 697.07 provides:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

The Lenders contend that once they have complied with the notice requirements of this provision, all ownership rights in the rents are transferred to them. The Debtors, on the other hand, contend that the assignments of rents are merely security

agreements which provide each Lender with additional security over and above its mortgage. As such, ownership rights remain with the respective Debtor and the rents are treated as property of the estate which can be used if the requirements of 11 U.S.C. §§ 361 and 363 are met.

The Florida bankruptcy courts which have considered this issue are divided, as are other bankruptcy court decisions interpreting Florida law. The two cases in Florida directly at odds with each other are: *In re One Fourth Street North Ltd.*, 103 B.R. 320 (Bankr.M.D.Fla.1989) and *In re 163rd Street Mini Storage, Inc.*, 113 B.R. 87 (Bankr.S.D.Fla.1990).

The debtor in *One Fourth Street* sought authority to use cash collateral. That request was opposed by the lender holding an assignment of rents and mortgage against the debtor's property. Relying upon the statutory language, "[i]f such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee," the lender contended that because it had fully complied with Fla.Stat. § 697.07, all ownership rights in those rents belonged to it. The court examined the law prior to the amendment of § 697.07, and concluded at 321 that:

> ..., it was well settled in this State that a mortgagee was not entitled to any of the rents and profits derived from the mortgaged property unless it had obtained an order of sequestration or actually took possession of the property either by consent or through the appointment of a receiver. *One Fourth Street* at 321.

The court further reasoned that a literal interpretation of § 697.07 would indicate a change in the prior law, in that once the conditions of that section were satisfied, the assignment of rents would become absolute and the rents would become property of the mortgagee, not property of the debtor or property of its bankruptcy estate.

However, the court declined to give Fla. Stat. § 697.07 such a literal interpretation. Rather, the *One Fourth Street* court concluded that § 697.07 should not be interpreted "to constitute a complete derogation of the law that had been well settled in this state." 103 B.R. at 321. The statute did not create a transfer of ownership interests in rents where such transfer had not existed previously. Further, reasoning that additional judicial proceedings could be required to determine the extent of the mortgagee's interest in those rents, the court concluded that such additional proceedings would be inconsistent with a transfer of absolute ownership interest to the mortgagees upon compliance with the statute. While the mortgagee has a valid security interest in those rents which then became cash collateral, no transfer of ownership interest had occurred. Thus, the rents are property of the estate.

In *163rd Street Mini Storage*, a different bankruptcy court reached the opposite conclusion under very similar facts. 113 B.R. 87 (Bankr.S.D.Fla.1990). Pursuant to a request to use cash collateral, the court first determined the effect of the notice required by Fla.Stat. § 697.07 upon the ownership interests in the rents. Relying upon the legislative history of § 697.07, the court held that section to create an absolute transfer of ownership interests in the rents, upon compliance with its provisions, and specifically declined to follow the *One Fourth Street* decision. The result was that upon default and the requisite demand to the mortgagor, the rents obtained from the property are not properly considered property of the estate or cash collateral as the debtor no longer has an interest in those rents. Therefore, absolute ownership rights vest with the mortgagee upon compliance with Fla.Stat. § 697.07. *163rd Street* at 90.

These two cases represent the respective positions of the Debtors and the Lenders presently before this Court. This Court concludes, however, that the analysis and reasoning of *One Fourth Street*, is more akin to the legislature's intent in enacting Fla.Stat. § 697.07. 103 B.R. at 320. This conclusion is supported by another recent Florida bankruptcy court decision. In *In re Growers Properties No. 56 Limited*, the court recognized that support existed for

concluding that upon compliance with Fla. Stat. § 697.07, the rent assignment becomes absolute. However, that court specifically held that the creditor did not hold such an interest, and that § 697.07 "does nothing more than dispel the necessity of a mortgagee to seek a receiver to protect rents." 117 B.R. 1015 (Bankr.M.D.Fla. 1990).

The *Growers Properties* court further reasoned that if the Florida statute were interpreted as to create an absolute transfer of all interest in the rents to the mortgage, reorganization possibilities by a debtor would be effectively eliminated. This Court agrees with that position. This is especially true in one-asset cases such as this where the debtor's only source of income is from those rents.

The conclusion that Fla.Stat. § 697.07 merely gives the mortgagee a right of possession in the rents where the mortgagee has a security interest consisting of an assignment of rents is further supported by an analysis in *In re Aloma Square, Inc.*, 85 B.R. 623 (Bankr.M.D.Fla.1988) *aff'd* 116 B.R. 827 (M.D.Fla.1990). The *Aloma Square* court analyzed whether Fla. Stat. § 697.07 could be applied retroactively to agreements entered into prior to the enactment of that section. Holding that § 697.07 could be applied to all pending cases, the court reasoned that this retroactive application was not prohibited because the statute affected procedural, not substantive, legal rights.

The *Aloma Square* court held that no new rights were created or taken away by new Fla.Stat. § 697.07, but, rather, merely the procedure for enforcing (or making choate) those rights had been altered. The section clarifies at what point the mortgagee is entitled to collect the rents, but does not grant the mortgagee an absolute right of ownership. This result necessarily follows. If Fla.Stat. § 697.07 were interpreted so as to give to the mortgagee an absolute ownership interest in the rents upon demand of these rents, the substantive law of Florida would have changed (as a new right would have been created) and the statute could *not* be applied retroactively.

*Young v. Altenhaus,* 472 So.2d 1152 (Fla. 1985). As the *Aloma Square* court reasoned, the better approach is to interpret Fla.Stat. § 697.07 as merely a change in the procedural manner by which an assignment of rents becomes effective.

The *Aloma Square* court further held that a creditor still must obtain relief from the automatic stay prior to asserting its rights under the assignment, and specifically referred to the rents as "cash collateral." By so holding the court implicitly recognized that these rents were property of the debtor's estate, a recognition which is inconsistent with an absolute ownership interest in the rents vesting with the mortgagee upon default and demand under Fla. Stat. § 697.07.

Recently, the analysis undertaken by the court in *Aloma Square* was affirmed. *See In re Aloma Square,* 116 B.R. 827 (M.D. Fla.1990). The district court approved the bankruptcy court's characterization of the statute as altering the remedy, not the right. It is the classification of the statute as procedural and not substantive which allows it to be applied retroactively. Furthermore, because it is procedural in nature, the statute does not change existing Florida substantive law regarding the ownership rights of rents under an assignment of rents clause.

■ To summarize, this Court agrees with the reasoning of *One Fourth Street,* 103 B.R. at 320, *Growers Properties,* 117 B.R. at 1015–16, and *Aloma Square,* 85 B.R. at 623, all of which hold that Fla.Stat. § 697.07 does not change the substantive law in Florida regarding rent assignments. The statute only determines how a mortgagee enforces its security interest in rents; it does not provide for an absolute transfer of ownership in these rents. As stated by the court in *One Fourth Street,* Fla.Stat. § 697.07 merely eliminates the mortgagee's need to obtain an order sequestering the rents or to take possession of the property prior to a right to receive the rents after the mortgagor's default.

This result is supported by the determination that Fla.Stat. § 697.07 may be applied retroactively because it merely

changes the procedural law and not the substantive law. The mortgagees' reliance upon *Aloma Square* to support their position that ownership rights are transferred to the mortgagee upon compliance with Fla.Stat. § 697.07 is misplaced because a finding that the statute may be applied retroactively presupposes a finding that the enactment does not change the substantive law. All of the decisions recognize that if § 697.07 is interpreted so as to grant the mortgagee absolute ownership rights in the rents, it is a change in the substantive mortgage law of Florida. This conclusion is supported by one court which has determined that Fla.Stat. § 697.07 may not be applied retroactively because it is a change in the substantive law of Florida. *See In re Camelot Associates Limited Partnership*, 102 B.R. 161 (D.Minn.1989), in which the court disagreed with *Aloma Square's* characterization of § 697.07 as procedural in nature.

This Court agrees with the reasoning in *Aloma Square*. New Fla.Stat. § 697.07 merely changes the procedure by which a mortgagee may enforce its assignment of rents. Now, upon default by the mortgagor and notice by the mortgagee to the mortgagor, the mortgagee has the right to possess or receive the rents. The notice is not "perfection" of a security interest, but rather is more akin to a repossession through a statutory scheme without first resorting to court process or to actual physical possession of the property from which the rents are generated.

As the mortgagees have a possessory interest in those rents and not an absolute ownership interest, the rents are property of the estate. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Therefore, this Court holds that in these cases the assignment of rents clauses in the mortgage documents merely create an additional security interest in those rents. As such, those rents are properly characterized as property of the various Debtors' bankruptcy estates.

### B. The Debtor's Rights and Obligations in the Rents

Having found that the Lenders' interests in the rents are in the nature of additional security interests, the Court must determine the extent of those security interests in rents generated by each property post-petition. For that purpose, portions of paragraph 26 of the most commonly used mortgage and assignment and § 552 of the Bankruptcy Code are relevant. This provision applies to all properties except Oldswood and Blossom II which will be discussed separately.

The applicable portion of the mortgage and assignment document used in all these cases except Blossom II and Oldswood states:

> All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Project and collecting the rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Project, premiums on insurance policies, taxes, assessments and other charges on the Project, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Project and then to the sums secured by this Instrument....

The portion of paragraph 26 quoted above makes it clear that only the portion of the rents remaining after payment of operating costs and other expenses related to the various properties would be applied to the Debtors' obligations under the promissory notes as secured by the various mortgages and assignments.

Section 552(a) of Title 11, United States Code provides that property acquired by a bankruptcy estate post-petition is not subject to a pre-petition security agreement. However, 11 U.S.C. § 552(b) rescinds that provision and carries forward the pre-petition security interest against assets generated post-petition if the pre-petition security interest extends to rents of the property. That continued enforcement, however, is only "to the extent provided by such securi-

ty agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b). The legislative history to that section indicates that "equities of the case" includes the situation where application of a pre-petition security interest to post-petition rents would be unfair to unsecured creditors because expenditures would be required of the estate to preserve the secured creditor's collateral or improve its position. *See* H.Rep. 95–595, 95th Cong. 1st Sess. 376,377 (1977) and S.Rep. 95–989, 95th Cong. 1st Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. As enacted, the provision may be even broader than the version commented upon in the legislative history cited. 4 *Collier On Bankruptcy* para. 552.02 (15th ed.1989).

■ Given the language of paragraph 26 of the various mortgages and assignments, the Court believes that the Lenders' liens, as defined by 11 U.S.C. § 101(33), were not contemplated or intended to require application of the gross rents to reduce the debt under the various promissory notes. The Lenders' nonrecourse[1] loans were extended to entities whose only assets are income producing real properties. The Lenders must have known that some portion of the gross rents would be required to keep the properties operating. This finding is buttressed by the language of the mortgages and assignments. Further, the Debtors' proposals to use the rents for operating expenses associated with the properties and the hearing on that request provide the notice and hearing required under § 552(b).

Thus, the Court finds that, with the exception of Blossom II and Oldswood, the Lenders' legitimate repayment interests in assigned rents effectively extend only to net rents after payment of ordinary, necessary expenses required to maintain and operate the properties to preserve their values. Such expenditures not only permit the reorganization process to proceed, but

also preserve the value of the Lenders' allowed secured claims. Alternatively, if this analysis is in error and if each Lender's interest attaches to the gross rents, as it appears it does in Blossom and Oldswood, each Debtor's use of such rents to maintain and manage the properties, preserve their values, and produce net rents provides adequate protection for the Lenders' interests. Finally, if the Court is incorrect regarding the parties' legal rights and remedies, the equities of these cases require that the Lenders' security interests in the post-petition rents extend only to the portion of those rents not reasonably needed to operate the properties. Whichever analysis is used, the result is the same. Effectively, application of the rents to reduce the obligations to the Lenders is limited to those rents remaining after the payment of reasonable expenses attributable to the properties. In an effort to eliminate disagreement over what expenses are reasonable, the Court further finds that the items listed below may be paid from the gross rents where such expenses are incurred on behalf of each property:

1. All payroll and normal and reasonable employee expenses, including post-petition payroll taxes for employees located at the property;

2. Utilities, equipment leases, insurance and similar expenses necessary to operate the property;

3. Reasonable fees under management and marketing agreements;

4. Ordinary and necessary repairs and maintenance to permit the continued use and operation of the property, but not, without consent of the Lender, any expenditure generally considered to be a capital improvement;

5. Ordinary advertising or marketing expenses;

6. Taxes and governmental charges accruing after the bankruptcy filings and attributable to the property;

---

1. According to the documents filed in Jupiter Cove, Blossom II, Oldswood and Blueberry, the notes are non-recourse. While the Court has not been provided the copies of the other notes, there is nothing in the record to indicate that the terms are different. Thus, this Court presumes that all the notes at issue in these proceedings are non-recourse.

7. Reasonable bookkeeping and accounting fees to the entity chosen by each Debtor to perform these services for the property; and

8. Other charges incurred after the filing of the petition in bankruptcy which are necessary to conduct the debtor's normal business operations.

In order that such expenditures may be evaluated periodically for reasonableness and necessity, the monthly operating reports filed by each Debtor must set forth in substantial detail all expenditures from gross rents. A copy of each monthly report must be sent to the respective Lender and to its counsel of record in these cases. Each Lender may object to these expenses if the reasonableness and necessity grounds are not met.

Given the Court's conclusion that the rents are to be considered property of the estate, those rents are to be treated as cash collateral pursuant to 11 U.S.C. § 363. Having determined that paying the ordinary operating expenses of each property will adequately protect each Lenders' interest in those rents, this Court will not address the issue of the relative rights of the parties in the net rents until the issues are appropriately raised by the parties. Such rents are cash collateral and a Debtor's usage of those rents is subject to the relevant requirements of the Bankruptcy Code. Whether payment of the net rents to a Lender on a periodic basis during the pendency of a Chapter 11 case is appropriate may well depend upon the factual circumstances of each case.

Based upon the foregoing, consistent with and subject to the findings expressed herein, each Debtor's request for an order authorizing the use of cash collateral to pay ordinary, necessary expenses to maintain and operate its property is granted. Florida Federal's motion in Blueberry Hill to deny the use of rents is denied.

IT IS SO ORDERED.