**In re 499 W. WARREN STREET ASSOCIATES, LTD. PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–01973.**

United States Bankruptcy Court, N.D. New York.

June 19, 1992.

---

Hancock & Estabrook, Syracuse, N.Y., for debtor; Stephen A. Donato, of counsel.

Costello, Cooney & Fearon, Syracuse, N.Y., for Norstar Bank of Upstate New York; Michelle C. Lombino, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Before the Court in this contested matter, is the application of 499 W. Warren Street Associates, Ltd. Partnership ("Debtor"), for the use of certain rents, which constitute cash collateral of the secured lender, Norstar Bank of Upstate New York ("Norstar").

On March 19, 1992, and continuing through March 20, April 6, 7, and May 1, the Court held evidentiary hearings on Debtor's application to use project rents,[1]

---

1. On July 15, 1991, the Debtor filed an application for authority to use certain rents generated by the Property. After a preliminary hearing on July 18, 1991, the Court entered a consent Order, dated July 22, 1991, authorizing the Debtor to use $20,000 of project rents subject to the budget filed with Debtor's application. Thereafter, upon consent of the parties and subject to certain conditions, the Court entered Orders approving the Debtor's first, second, third, and fourth extensions of the interim Order. The

and on Norstar's cross-motion, filed on November 14, 1991, seeking an order lifting the automatic stay to allow Norstar to continue to foreclose against the subject property, or in the alternative, dismissal of the case.

Additionally, on May 1, the Court also heard argument attempting to settle the terms of an order incorporating the Court's cash collateral holding of April 6.[2] During the course of this hearing the issue was narrowed to whether the Debtor may use a portion of the project rents/cash collateral ("Rents") to pay the reasonable and necessary operating expenses for the subject property.

On May 5, 1992, the parties presented oral argument on this issue. In light of the Court's acceptance of Debtor's memorandum of law, submitted subsequent to that of its opponent's, Norstar was given until May 20, to submit a reply. Having received such, the matter was submitted for decision on May 20, 1992.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(G) and (M).

### FACTS

The Debtor is a New York limited Partnership formed in October, 1985 for the purpose of owning and operating certain commercial real estate known as 499 South Warren Street in Syracuse, New York (the "Property"). The Property consists of a commercial office building in which the Debtor leases office space to approximately fourteen tenants.

On July 11, 1991, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Since that

time the Debtor has continued to operate and manage its business as a Debtor-in-possession pursuant to Code §§ 1107 and 1108.

As of the filing date of the petition, the Property was encumbered by two mortgages. Norstar holds a first mortgage in the approximate amount of $2,191,924.57.[3] Mechanics and Farmers Savings Bank ("MFSB") holds a second mortgage with an outstanding balance in the approximate sum of $569,616.70.

In addition to the first and second mortgages noted above, the Property is also encumbered by a tax lien held by the City of Syracuse in the approximate sum of $635,746.22 for unpaid real property taxes.

At the hearings on Norstar's cross-motion to lift the stay or dismiss the case, commenced on March 19, 1992, the Debtor stipulated that Norstar is undersecured and that the Debtor has no equity in the property. The Debtor, however, did not stipulate to the $1,500,000.00 fair market value ascribed to the Property under the Norstar appraisal. The Debtor's schedules valued the Property at $3,300,000.

### ARGUMENTS

The Debtor argues that Norstar's security interest attaches only to the "net" rental income remaining after payment of normal daily operating expenses of the Property. Alternatively, if Norstar's security interest attaches to the "gross" rental income, then the reinvestment of a portion of the Rents back into the property for payment of the actual and necessary operating expenses contributes to the generation of additional rents which serve to adequately protect Norstar's interests under Code §§ 361 and 363.

In the alternative, the Debtor asserts that it should be authorized to surcharge the cash collateral pursuant to Code

---

interim Order continues in effect pending resolution of this contested matter.

2. At the April 6, 1992 hearing, the Court held that Norstar had a perfected security interest in rents accruing from November 14, 1991 and that such rents constituted cash collateral under

§ 363(a) of the Bankruptcy Code. No order has ever been entered, however, embodying the Court's holding.

3. The current amount of indebtedness to Norstar reflects a $34,000.00 principal payment made by the Debtor post-petition.

§ 506(c), from November 14, 1991 forward, as the expenses incurred through its continued operation of the Property directly benefit Norstar by preserving the value of Norstar's collateral.

Norstar argues that both of its secured interests in assets of the Debtor, namely, the building itself and the rental income it generates, must be adequately protected. While use of the Rents to pay operating costs may serve to adequately protect its interest in the building, such use depletes the Rents, therefore its interest therein is not adequately protected.

Additionally, Norstar argues that where a debtor has no reasonable prospect of reorganization, use of rents to pay the operating expenses of real property does not constitute adequate protection if the secured creditor is undersecured and the debtor possesses no other form of collateral upon which a lien can be given.[4]

## DISCUSSION

Code § 363(e) provides that upon request of an entity who has an interest in property sought to be used by a debtor-in-possession, the court shall condition or prohibit such use as is necessary to adequately protect that entity's interest. Under such circumstances, the burden of proving adequate protection rests with the debtor. Code § 363(o).[5]

▪▪▪ A secured creditor holding both a mortgage securing a debt on a parcel of real property, and a perfected security interest in rents derived therefrom, holds two distinct interests. *See In re Landing Associates, Ltd.,* 122 B.R. 288, 296 (Bankr. W.D.Tex.1990); *In re Apple Tree Partners, L.P.,* 131 B.R. 380, 400 (Bankr. W.D.Tenn.1991). The value of each of these interests must be separately considered and, if necessary, adequately protected. Under appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies this requirement. *See In re Pine Lake Village Apartment Co.,* 16 B.R. 750, 756 (Bankr. S.D.N.Y.1982) ("*Pine Lake I*"); *In re Willowood East Apartments of Indianapolis,* 114 B.R. 138, 143–44 (Bankr.S.D.Ohio 1990); *In re Cardinal Industries, Inc.,* 118 B.R. 971, 981 (Bankr.S.D.Ohio 1990).

A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance. *See Pine Lake I, supra,* 16 B.R. at 756. In that case, Bankruptcy Judge Schwartzberg held that "... the application of rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the ... plaintiff-mortgagee's claim. [The use of such funds] without any diversion ... to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected." *Id.*[6]

Similarly, in *In re Willowood East Apartments, supra,* 114 B.R. at 138, the debtor-in-possession sought an order authorizing it to use a portion of the rents for payment of the normal operating expenses

---

4. To find in Norstar's favor on this issue the Court must conclude that the Debtor has proposed an unconfirmable plan or that the Debtor has no reasonable prospect of reorganization. This issue, however, is not presently before the Court for decision as the parties have been given until June 30, 1992 to submit memoranda of law on Norstar's pending motion to lift the stay or to dismiss the case. Consequently, the matter will be separately decided at that time.

5. Although Code §§ 363(e) and (o) refer to a trustee's use of property, under Code § 1107 a debtor-in-possession serves as the functional equivalent of a trustee.

6. In a subsequent decision in the same case, Judge Schwartzberg granted the secured creditor's motion for relief from the stay, thus deny-ing further use of rents/cash collateral for the payment of operational expenses. *See In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 834 (Bankr.S.D.N.Y.1982) ("*Pine Lake II*"). In that case the court found that "... no effective reorganization [would be] attainable because the debtor's plan ... [does] not comply with the applicable provisions of Chapter 11." *Id.* at 834 (failure to provide "fair and equitable" treatment of an impaired, nonconsenting class under Code § 1129(b)(2)(B)). Additionally, the court found that the plan was unconfirmable under Code § 1129(a)(10) given the mortgagee's assertion that it would reject any debtor proposed plan. *Id.* at 833–34.

associated with the property. In granting the debtor's motion, the court held that such use preserves the value of the secured claim and provides adequate protection for that interest. *Id.* at 143–44.

Additionally, the creditor's interest in the rental income generated by the property is adequately protected when a portion of the rents is reinvested in the property for operational expenses and maintenance. Funds so utilized contribute to the generation of additional rents upon which that creditor's security interest subsequently attaches. *See In re Cardinal Industries Inc., supra,* 118 B.R. at 981. *See also In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 826 (Bankr.S.D.N.Y.1982) (*"Pine Lake II"*) (value of the property securing the creditor's claim increases to the extent of unspent rental income accumulating in the segregated cash collateral account).

■ The debtor-in-possession may use project rents for the payment of reasonable and necessary operating expenses of the property regardless of whether the mortgagee's interest is said to attach to the "net" or "gross" rents. *Cardinal Industries, supra,* 118 B.R. at 981; *see In re Willowood, supra,* 114 B.R. at 143–44. As noted by Bankruptcy Judge Sellers in *Cardinal,* the loans were "... extended to entities whose only assets are income producing real properties. The lender must have known that some portion of gross rents would be required to keep the properties operating." *Cardinal, supra,* 118 B.R. at 981. In evaluating the rental assignment clauses involved in that case, some of which provided for the payment of operating expenses before payment on the debt and others without such proviso, the court held that under either scenario, application of the rents to reduce the outstanding debt "... is limited to those rents remaining after the payment of reasonable expenses attributable to the properties." *Id.*[7]

The foregoing use of project rents is not proscribed where the debtor's sole asset is the collateral, and the creditor is undersecured. *See Pine Lake I, supra,* 16 B.R. at 750. In that case, the debtor's principal asset was a single apartment building and the mortgagee was vastly undersecured. *See also Pine Lake II, supra,* 19 B.R. at 819, 828 (dictum) (secured interest may be adequately protected by maintenance of the status quo, notwithstanding debtor's lack of equity in the property); *In re Marion Street Partnership,* 108 B.R. 218 (Bankr.D.Minn.1989) (single asset debtor where creditor is undersecured in the real estate by approximately 10% of the amount of indebtedness); *In re Willowood, supra,* 114 B.R. at 145 (creditor undersecured).

■ The interest in property sought to be protected under Code § 361 is the value of the secured creditor's collateral during the interim period between the filing of the petition and confirmation of a plan of reorganization, or dismissal of the case. *See In re Alyucan Interstate Corp.,* 12 B.R. 803, 808 (Bankr.D.Utah 1981). Code § 363(e) safeguards against any decrease in value attributable to the debtor's proposed use of the collateral. *See In re Island Helicopter Corp.,* 63 B.R. 515, 520 (Bankr.E.D.N.Y. 1986).

■ In the matter before the Court, Norstar argues that the value of the Property is "precipitously depreciating", as evidenced by a comparison of the Debtor's scheduled value ($3,300,000.00) to that of Norstar's appraisal ($1,500,000.00). This argument, however, is unavailing upon full

---

7. In an effort to eliminate disagreement over what expenses are reasonable, Judge Sellers found that payment of the following could be made from gross rents where such are incurred on behalf of the property:

1) All payroll and normal and reasonable employee expenses ...;
2) Utilities, equipment leases, insurance and similar expenses necessary to operate the property;
3) Reasonable management and marketing agreement fees;
4) Ordinary and necessary repairs and maintenance ... but not capital improvements without the mortgagee's consent;
5) Ordinary advertising and marketing expenses;
6) Post petition taxes and other government charges ...;
7) Reasonable bookkeeping and accounting fees ...; and
8) Other post petition charges which are necessary to conduct normal business operations.
*See Id.* at 981–82; *Willowood, supra,* 114 B.R. at 144.

consideration of the Norstar appraisal, and in light of the Debtor's acknowledgement that its scheduled value is inaccurate.

While not providing its own valuation testimony, the Debtor was able to establish from Norstar's appraisal that the value of the Property shows no signs of depreciating prior to the plan being reached for confirmation.[8] Additionally, Debtor's own appraiser, David Peatfield, contended that Norstar's appraisal shows an increase in the value of the property occurring over time. Thus, there is no compelling proof that the value of the Property securing the debt to Norstar is currently decreasing in value or that it is expected to do so in the immediate future.

Further, the Court finds that the Property is well maintained, shows no significant signs of deferred maintenance, and enjoys an occupancy rate (approximately 96%) well above average for either class "A" (approximately 86%) or class "B" (approximately 81%) commercial rental properties in downtown Syracuse. Cash flow from the Property is presently sufficient to pay current operating expenses and maintenance costs while still providing a surplus for deposit into an escrow account. Additionally, the Court finds that the Property has been managed in a responsible and competent manner.

There being no indication that these circumstances have changed, or are likely to do so in the immediate future, the Court finds that the Rents generated by the Property, as well the Property's underlying value, are likely to remain stable at least until Debtor's plan can be reached for confirmation or the Chapter 11 case is otherwise disposed of.

Based on the foregoing, the Court concludes that the Debtor's use of a limited portion of the Rents for the payment of the reasonable and necessary operating expenses of the Property adequately protects Norstar's interests. While use of a portion of these Rents arguably diminishes Norstar's interest therein, the Court holds that committing a limited portion of same to operate and maintain the Property protects the underlying value of the collateral from decline and, therefore, provides adequate protection under Code § 363(e) for the continued generation of Rents to which Norstar's lien will attach.

In light of the Court's decision it is not necessary to separately consider Debtor's alternative argument arising under Code § 506(c).

Based on the foregoing, it is

ORDERED that:

1) The Debtor may utilize a limited portion of the Rents generated by the property located at 499 South Warren Street for payment of the reasonable and necessary operating expenses of the property pursuant to a budget which shall be submitted to Norstar and the United States Trustee monthly, and subject to the terms and conditions contained in the Interim Order and all extensions thereto.

2) The Debtor's payment of $30,265.92 to the City of Syracuse for first quarter 1992 taxes is not chargeable against the amount of non-cash collateral in the Norstar escrow account as of November 14, 1991.[9]

3) Pursuant to Code § 363(c)(2), the Debtor may not utilize the Rents to make any payments which are inconsistent with the terms of this order without first obtaining the consent of Norstar or further approval of this Court.

---

**8.** On cross examination during the hearing held on March 19, Norstar's appraiser, Paul Wicker, acknowledged that according to his appraisal analysis, the value of the Property in a hypothetical sale at the end of a ten year period, would be approximately $1,572,310.00, slightly greater than the $1,500,000.00 value on the July 11, 1991, petition date.

**9.** The Court's ruling in this ordering paragraph resolves the second matter of dispute arising between the parties as they attempted to settle the terms of an order embodying the Court's cash collateral holding of April 6, 1992.

The first matter of dispute was settled at the hearing on May 1, 1992 when the Court held that the funds present in the escrow account prior to November 14, 1991, the perfection date of Norstar's security interest, were non-cash collateral. The Court concluded, therefore, that expenses for the month of November which might accrue after November 14, 1991 were not to be charged against the non-cash collateral in the account.

With regard to the second matter of dispute, the Debtor's payment of real property taxes to the City of Syracuse in December 1991 in the amount of $30,265.92, is not chargeable against

4) This Memorandum Decision and Order is without prejudice to Norstar's right to renew its objection to further use of cash collateral upon proof that the economic conditions upon which the decision is based have changed.

the non-cash collateral since it was an ordinary and necessary expense of the property at the time it was paid, albeit that it was not included in the budget presented to Norstar and, in fact, is a claim that primes Norstar's mortgage.