### In re WILLOWOOD EAST APARTMENTS OF INDIANAPOLIS II, LTD., Debtor.

**Bankruptcy Nos. 2–90–00155, 35–1673897.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 30, 1990.

See also, Bkrtcy., 113 B.R. 392.

Thomas C. Scott, Richard K. Stovall, Thompson, Hine and Flory, Columbus, Ohio, for Lincoln Nat. Bank & Trust Co.

Kenneth R. Cookson, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for debtor.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, Special Counsel to trustee.

Jay Alix, Southfield, Mich., for Cardinal Industries, Inc.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, General Counsel to trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio.

Lori Lapin Jones, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, and Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for Official Committee of Unsecured Creditors of Cardinal Industries, Inc.

P. Steven Kratsch, Kilpatrick & Cody, Atlanta, Ga., for Official Committee of Unsecured Creditors of Cardinal Industries of Florida, Inc.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, for Cardinal Industries of Georgia, Inc., Cardinal Industries Mortgage Co. and Cardinal Parts Service Co.

Charles J. Taunt, Birmingham, Mich., for Cardinal Industries Services Corp.

James H. Bownas, Cardinal Industries, Inc., Columbus, Ohio, In–House Counsel.

Gary H. Cunningham, Southfield, Mich., for Cardinal Lodging Group, Inc. and Cardinal Apartment Management Group, Inc.

Thomas R. Noland, Altick & Corwin, Dayton, Ohio, for Cardinal Partnership Corp. and Cardinal Partner Corp.

OPINION AND ORDER ON APPLICATION FOR APPOINTMENT OF ATTORNEY AND MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon an Application for Appointment of Attorney for Debtor–In–Possession ("Application") and a Motion for Order Authorizing the Debtor's Use of Cash Collateral ("Motion"). The Application and Motion were filed on behalf of the debtor-in-possession in this Chapter 11 case, Willowood East Apartments of Indianapolis II, Ltd. ("Debtor"). Both requests were opposed by Lincoln National Bank and Trust Company ("Lincoln") and were heard by the Court on February 20, 1990.

The Court has jurisdiction in these matters pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. These are core proceedings which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A), (M) and (O). The following constitute findings of fact and conclusions of law.

## I. FACTUAL BACKGROUND

The factual background of this dispute is essentially undisputed. The Debtor is the owner of certain real property located in Indianapolis, Indiana and known as phase two of the Willowood East Apartments of Indianapolis (the "Property"). The Property is comprised of a 60 unit apartment complex which includes efficiency, one bedroom and two bedroom apartments.

On April 15, 1985, the Debtor executed a Promissory Note for the sum of $1,125,000.00 payable to Cardinal Industries Mortgage Company ("CIMC"). CIMC assigned the Promissory Note to Lincoln on May 5, 1985. The Promissory Note is due and payable under its original terms on May 1, 1991.

The obligations of the Debtor under the Promissory Note are secured by a Mortgage, Assignment of Rents and Security Agreement ("Mortgage and Assignment") dated April 15, 1985. CIMC assigned the Mortgage and Assignment to Lincoln April 30, 1985 and it was recorded on May 14, 1985. The security interest in personal property was perfected by the filing of a financing statement with the county recorder.

Under the terms of the Promissory Note, the Debtor was required to make monthly payments of principal and interest. The last payment Lincoln received directly from the Debtor was in March, 1989 for the February, 1989 installment. Thereafter the Debtor was in default of its obligations. Lincoln then initiated state court proceedings to foreclose on the Property and sought the appointment of a state court receiver. Regency Windsor Management,

Inc. was appointed receiver on June 13, 1989. The receiver took possession of the Property on September 1, 1989, and has remained in possession since that date.

The state court entered a decree of foreclosure and order of sale on a default basis on October 5, 1989. A foreclosure sale was scheduled for January 10, 1990 at 10:00 a.m. On January 10, 1990, prior to the scheduled sale, the Debtor filed its voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

## II. THE RELIEF SOUGHT

The Application seeks to have the Court appoint the law firm of Carlile, Patchen, Murphy & Allison ("Carlile") as counsel for the Debtor in this Chapter 11 case. As part of the appointment process, the Debtor requests authorization to advance to Carlile a retainer for contemplated services in the amount of $15,000. Lincoln does not oppose the selection of the Carlile firm, but opposes payment of the retainer. The basis asserted by Lincoln for its opposition is that the source for the retainer will be rents from the Property ("Rents") which are either Lincoln's property or its cash collateral. As Lincoln does not consent to such usage, it argues that payment of the retainer would be conversion of its property or an unauthorized use of its cash collateral.

The Motion seeks an order from the Court authorizing the Debtor to use the Rents to pay normal operating expenses associated with running the Property, including payroll, utilities, supplies and management fees. There is no specific request for the advancement of either a retainer or fees for legal counsel, but the use of cash for "all other necessary functions" is included in the request. Lincoln opposes the Motion on essentially the same grounds as those cited in its opposition to the Application. It again asserts that it has an absolute ownership interest or a security interest in the Rents.

## III. ISSUES

The issues before the Court for determination are as follows:

1. What is the nature and extent of Lincoln's interest in the Rents?
2. For what purposes and under what conditions may the Debtor use the Rents?

## IV. DISCUSSION AND CONCLUSIONS OF LAW

A. *The Nature of Lincoln's Interest in the Rents.*

Any determination of Lincoln's objections requires an analysis of the nature of its interest in the Rents. Are the Rents the property of Lincoln by absolute transfer under the Mortgage and Assignment or are the Rents additional security for repayment of the Promissory Note?

The assignment to Lincoln of an interest in the Rents appears as paragraph 26 of the Mortgage and Assignment. In applicable part that paragraph provides:

26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues, including all security deposits, of the Project, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Project, regardless of to whom the rents and revenues of the Project are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Project to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Project as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to

the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Project in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Project as specified in this paragraph as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents....

 \* \* \* \* \* \*

... This assignment of rents shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

There is no dispute between Lincoln and the Debtor as to the ownership of the Property. The Debtor is the record owner and is also the beneficial owner. The Property, therefore, is property of the bankruptcy estate. 11 U.S.C. § 541(a). Section 541(a)(6) then brings the Rents into the estate as "rents ... from property of the estate." Such property, however, is subject to valid liens or interests asserted by third persons such as Lincoln.

Lincoln argues that the language of the rents assignment clause indicates that ownership of past and future Rents was transferred at the time the Mortgage and Assignment were executed. As the result of that transfer, Lincoln asserts that it is the absolute owner of the Rents once a default has been declared. In support of that position Lincoln relies upon Indiana law.

Lincoln's reliance upon Indiana law is premised upon a decision of the Supreme Court of the United States interpreting the Bankruptcy Act of 1898. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Insofar as *Butner* is read to require the Bankruptcy Court to recognize property rights created under applicable state law, such reliance is correct. *Butner,* however, does not determine applicable state law. Further, *Butner* permits an overriding federal interest to alter the result otherwise required under state law. *Butner,* 440 U.S. at 55, 99 S.Ct. at 918.

In support of its argument that Indiana state law recognizes an assignment of rents as an absolute transfer of an ownership interest in property and not merely as a lien against present or future rents, Lincoln directs the Court to the holding of *In the Matter of the Estate of Smith,* 180 Ind.App. 198, 388 N.E.2d 287 (1979).

The issue before the court in *Smith* was whether an assignment of rents from a lease of business property obligated the executor of Smith's will to apply those rents as payments to a lender. The lender held a note secured not only by those rents, but also by a mortgage against Smith's home and certain certificates of deposit. The proceeds of the note had been used to purchase the home. That issue was important because Smith's wife now owned the home subject to the mortgage, but had no liability on the underlying note. Smith's devisees, other than his wife who had elected to take against the will, wanted payment of the note to come from sources other than the rents from the lease of the business property in which they now had an interest.

The *Smith* court found that the estate and the devisees of the leased property were bound by the assignment. The court observed, however, that Smith could have elected to make the mortgage payments from another source, but neither the parties to whom the business premises were bequeathed nor the executor could determine that such rentals need not be applied to the mortgage debt. *Smith,* 388 N.E.2d at 289.

The sense this Court gets from *Smith* is that the agreement between the lender and

Smith, to make the separate lease rentals available to service the debt for the home, was enforceable after the death of Smith against the devisees of the property from which the rentals were generated. However, given the court's indication that Smith could have made his payments to the lender from another source, the lender's interest in the rentals was not an absolute transfer of ownership. In fact the assignment apparently was designated as security for the payment of the note. The absoluteness referred to by the court was not the ownership of the rents, but the enforceability of the contract against Smith's devisees.

By analogy Lincoln also has a contractual right, which arises upon default, to have its debt satisfied by application of all or some portion of the Rents. This right exists even if Lincoln's obligation is fully secured by the value of the Property. To the extent that right creates a lien, as defined by 11 U.S.C. § 101(33), that lien is not taken away by the debtor's Chapter 11 filing. The value of the lien is also protected by constitutional concerns. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589–90, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935). Because Lincoln's lien was created by agreement, it is also a security interest pursuant to 11 U.S.C. § 101(45). Certain contractual aspects of that agreement are subject to modification under the bankruptcy statutes and under the Supremacy Clause. *Whiting Pools*, 462 U.S. at 206, 103 S.Ct. at 2314. Thus, while the contract is binding on the debtor as a similar contract bound the devisees and estate of *Smith*, the timing of Lincoln's right to enforcement and payment are capable of alteration by the bankruptcy estate. Such power of alteration is the essence of bankruptcy law and distinguishes this case from *Smith*.

Even if *Smith* recognizes an assignment of rents as something more than a security interest, which the Court does not believe it does, this Court may always look beyond the language of the Mortgage and Assignment to determine the substance of the transaction between Lincoln and the Debtor. *See* 55 Am.Jur.2d *Mortgage* §§ 32–82 (1971). Such examination reveals that the relationship between Lincoln and the Debtor is intended to be that of a mortgagee and mortgagor.

■ Lincoln could not become the owner of the Property even after the Debtor's default in payments under the note until a foreclosure sale or other transfer of title had occurred. Until such transfer occurred the Debtor retained a right to redeem the Property. After default but without the Chapter 11 filing, however, the Debtor had agreed in the Mortgage and Assignment that it would lose the right to direct the use of the Property's Rents and Lincoln could enforce its lien interest in the Rents upon notice, without formal legal action. In essence the Debtor had agreed that once it defaulted in payments, Lincoln could repossess its additional collateral, the Rents, upon a simple notice of default. There is no dispute, however, and indeed the last sentence of paragraph 26 of the Mortgage and Assignment so states, that once the indebtedness evidenced by the Promissory Note has been paid, the right to use the Rents reverts to the Debtor.

The transfer of possession only until satisfaction of the debt for which the property is charged appears to the Court to be in the nature of a mortgage or security interest and not in the nature of a transfer of ownership interest. Further, the parties treated the transaction as a loan with a grant of a security interest and referred throughout the Mortgage and Assignment to the indebtedness secured by that instrument. Accordingly, the Court will construe the rights of the parties in a manner consistent with their stated and acted-upon intentions. Such construction is also most consistent with the goal of reorganization. *Whiting Pools*, 462 U.S. at 203–04, 103 S.Ct. at 2312–13.

B. *The Debtor's Rights and Obligations Relating to the Rents.*

 1. The Extent of Lincoln's Security Interest.

Having found that Lincoln's interest in the Rents is in the nature of a security

interest, the Court must determine the extent of that security interest in Rents generated by the Property post-petition. For that purpose portions of paragraph 26 of the Mortgage and Assignment and § 552 of the Bankruptcy Code are relevant.

The applicable portion of paragraph 26 of the Mortgage and Assignment states:

> All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Project and collecting the rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Project, premiums on insurance policies, taxes, assessments and other charges on the Project, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Project and then to the sums secured by this Instrument.…

The portion of paragraph 26 quoted above makes it clear that only the portion of the Rents remaining after payment of operating costs and other expenses related to the Property would be applied to the Debtor's obligation under the Promissory Note as secured by the Mortgage and Assignment.

Section 552(a) of Title 11, United States Code provides that property acquired by a bankruptcy estate post-petition is not subject to a pre-petition security agreement. However, 11 U.S.C. § 552(b) rescinds that provision and carries forward the pre-petition security interest against assets generated post-petition if the pre-petition security interest extends to rents of the property. That continued enforcement, however, is only "to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b). The legislative history to that section indicates that "equities of the case" includes the situation where application of a pre-petition security interest to post-petition rents would be unfair to unsecured creditors because expenditures would be required of the estate to preserve the secured creditor's collateral or improve its position. *See* H.Rep. 95–595, 95th Cong. 1st Sess. 376, 377 (1977) and S.Rep. 95–989, 95th Cong. 1st Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877, 6332, 6333. As enacted, the provision may be even broader than the version commented upon in the legislative history cited. 4 *Collier On Bankruptcy* para. 552.02 (15th ed. 1989).

 Given the language of paragraph 26 of the Mortgage and Assignment, the Court believes that Lincoln's lien, as defined by 11 U.S.C. § 101(33), was not contemplated or intended to require application of the gross Rents to reduce the debt under the Promissory Note. Lincoln's non-recourse loan was extended to an entity whose only asset is income producing real property. Lincoln must have known that some portion of the gross rents would be required to keep the Property operating. This finding is buttressed by the language of paragraph 26 of the Mortgage and Assignment. Further, the Debtor's proposal to use the Rents for operating expenses associated with the property and the hearing on that request provide the notice and hearing required under § 552(b).

Thus, the Court finds that Lincoln's interest in assigned rents effectively extends only to net Rents after payment of ordinary, necessary expenses required to maintain and operate the Property to preserve its value. Such preservation not only permits the reorganization process to proceed, but also preserves the value of Lincoln's allowed secured claim. Alternatively, if Lincoln's interest attaches to the gross Rents, the Debtor's use of such Rents to maintain and manage the Property, preserve its value, and produce net Rents provides adequate protection for Lincoln's interest. Finally, if the Court is in error regarding the legal rights and remedies, the equities of this case require that Lincoln's security interest in the post-petition Rents extend only to the portion of those Rents not reasonably needed to operate the

Property. Whichever analysis is used, the result is the same. Effectively, Lincoln's security interest in the Rents is limited to those Rents remaining after the payment of reasonable expenses attributable to the Property. In an effort to eliminate disagreement over what expenses are reasonable, the Court further finds that the items listed below may be paid from the gross Rents where such expenses are incurred on behalf of the Property:

1. All payroll and normal and reasonable employee expenses, including post-petition payroll taxes for employees located at the Property;

2. Utilities, equipment leases, insurance and similar expenses necessary to operate the Property;

3. Reasonable fees under management and marketing agreements;

4. Ordinary and necessary repairs and maintenance to permit the continued use and operation of the Property, but not, without consent of Lincoln, any expenditure generally considered to be a capital improvement;

5. Ordinary advertising or marketing expenses;

6. Taxes and governmental charges accruing after the filing of the Petition herein attributable to the Property;

7. Reasonable bookkeeping and accounting fees to the entity chosen by the Debtor to perform these services for the Property; and

8. Other charges incurred after the filing of the Petition which are necessary to conduct the Debtor's normal business operations.

In order that such expenditures may be evaluated periodically for reasonableness and necessity, the monthly operating reports filed by the Debtor must set forth in substantial detail all expenditures from gross Rents. A copy of each monthly report must be sent to Lincoln and to its counsel of record in this case. Lincoln may object to those expenses if the reasonableness and necessity grounds are not met.

2. The Relative Rights of the Parties in the Net Rents.

The Court has previously determined that the nature of Lincoln's interest in the Rents is that of a security interest and that such interest is not effective or enforceable against the gross Rents to the extent such Rents are reasonably required to operate and maintain the Property. The issue remaining, therefore, is the relative rights of Lincoln and the Debtor in the Rents which remain after the operating expenses have been paid.

Much of the case law in this area is confusing and perhaps irrelevant in this case. Most of the cases reviewed by the Court struggle with concepts of perfection of a lender's assignment of rents or discussion of the status of the mortgagee where the bankruptcy filing precedes the mortgagee's exercise of possessory rights, characterized by this Court as consensual repossession. None of those issues have been raised in this case.

There is no question but that Lincoln's security interest in the Rents was perfected with regard to third parties on May 14, 1985 when the Mortgage and Assignment were filed of record. *In re Marion Street Partnership*, 108 B.R. 218 (Bankr.D.Minn. 1989). Further, if the law of Indiana, where the Property is located, requires Lincoln, as a mortgagee with a security interest in future rents, to take affirmative action to enforce its right prior to any present rights to possession of the Rents, such action was certainly accomplished by the state court's appointment of a receiver prior to the bankruptcy filing. Completion of whatever steps are required to obtain possession of the Rents is not an issue related to perfection of Lincoln's lien, however, and is probably an irrelevant issue in a Chapter 11 setting. Even if a lender has exercised its rights to obtain possession of rents prior to its borrower's bankruptcy filing, net Rents still in the lender's or receiver's possession and not yet applied to the lender's loan balance, as well as future rents, may be subject to turnover and usage by a debtor-in-possession in a Chapter 11 case if the statutory protections are

provided. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). To the extent the lender has an enforceable security interest in the post-petition Rents, which in this case is to the extent of the net Rents, such net Rents are cash collateral.

 The Debtor's usage of Lincoln's cash collateral is governed by the provisions of 11 U.S.C. § 363 and § 361. Where a lender is undersecured, as Lincoln has been found to be in an opinion of this Court entered March 23, 1990 in connection with a relief from stay action, the Debtor's usage of the net Rents will cause a decrease in the value of Lincoln's interest in property in which the estate has an interest. Any such decrease attributable to the Debtor's usage, therefore, must be protected by cash payments from another source, an additional or replacement lien, or other such indubitable equivalent. 11 U.S.C. § 361. Accordingly, unless payment of a retainer to the counsel chosen by the partnership to represent it in Chapter 11 can be considered a reasonable ordinary operating expense of the Property, the Debtor may not use the net Rents for such purpose without providing adequate protection.

The Court finds that the partnership's legal expenses in filing and prosecuting its Chapter 11 case are not ordinary operating expenses of the Property within the contemplation of the parties under the Mortgage and Assignment. Therefore, such funds must come from a source other than the Rents unless adequate protection is given to Lincoln. No such protection was offered in this case and, therefore, such usage is not authorized.

This finding does not mean that Lincoln may initiate frivolous or ill-founded legal actions which the Debtor will have to defend. If such actions occur, the Court will find, pursuant to 11 U.S.C. § 552(b) or on general equitable grounds, that the security interest in Rents does not extend to that portion of the rents required to pay counsel for defense of such actions. In addition, this finding does not require the Debtor to turn the net Rents over to Lincoln at the time the Rents are received. It only re-quires that the Debtor not use such funds except as authorized by the Bankruptcy Code or an order of this Court.

## CONCLUSION

Based upon the foregoing, the Court sustains the Debtor's Application for Appointment of an Attorney insofar as it seeks to appoint the Carlile firm, but denies that Application to the extent it seeks to pay a retainer to that counsel from the Rents. The Debtor's Motion for an Order Authorizing the Use of Cash Collateral is granted to the extent such request is consistent with the findings expressed herein.

IT IS SO ORDERED.