In re ROLLINGWOOD APARTMENTS, LTD., Debtor.

Bankruptcy No. 2–91–01353.

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 22, 1991.

Dean S. Cooper, Associate Gen. Counsel, McLean, Va., and Joseph C. Winner, McFadden and Winner, Columbus, Ohio, for Federal Home Loan Mortg. Corp.

Robert H. Skilton, William J. Barrett, Audrey Polite, Gardner, Carton & Douglas, Chicago, Ill., for debtor.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, for Trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of the U.S. Trustee for Region IX.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen, P.C., Southfield, Mich., Sp. Counsel to the Trustee of the Consolidated Estate.

James Bownas, Legal Counsel, Cardinal Industries, Inc., Columbus, Ohio.

### OPINION AND ORDER ON MOTIONS SEEKING RELIEF FROM STAY OR FOR USE OF RENTS

BARBARA J. SELLERS, Bankruptcy Judge.

These matters are before the Court on a motion of Federal Home Loan Mortgage Corporation ("Freddie Mac"), seeking relief from the automatic stay, and on a motion of the debtor, Rollingwood Apartments Ltd. ("Rollingwood"), seeking authorization to use cash collateral. Because resolution of these matters depended upon another matter under advisement before the Court, the parties were informed on the record that a decision would not be rendered in these matters within the 30 day time requirement of Bankruptcy Rule 4001(a)(2). Freddie Mac did not object to that procedure.

The Court has jurisdiction in these matters under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (M) which this bankruptcy judge may hear and determine.

## I. *Procedural Background and Facts*

Rollingwood, a Florida limited partnership, is one of approximately 280 limited partnership debtors operating under Chapter 11 before this Court which has Cardinal Industries, Inc., or one of its affiliates, as its general partner. Rollingwood is a single asset debtor with real property and an apartment complex located in Seminole County, Florida. In February 1987, Rollingwood executed a promissory note in the principal amount of $1,213,000, payable to Southern Federal Savings and Loan Association of Georgia. This note was subsequently assigned to Freddie Mac. Repayment of Rollingwood's obligations under this note is secured by a mortgage, assignment of rents and security agreement.

On June 1, 1989, Rollingwood defaulted on the note. On December 26, 1990, Freddie Mac made written demand for the rents under Fla.Stat. § 697.07. Rollingwood filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 22, 1991.

Following a preliminary hearing, Rollingwood and Freddie Mac entered into an agreed temporary cash collateral order. Rollingwood continues to collect the rents, pay the necessary and ordinary expenses of the property and remit the net rents to Freddie Mac.

The parties have stipulated the amounts owing to Freddie Mac as of March 31, 1991 as follows:

| | |
|---|---|
| Principal | $1,194,036.02 |
| Interest | 70,273.60 |
| Late Charges | 12,138.48 |
| Default Interest | 20,895.63 |
| Appraisal (10/89) | 4,000.00 |
| TOTAL: | $1,301,343.73 |

## II. *The Respective Positions of the Parties*

Rollingwood opposes Freddie Mac's motion for relief from stay and contends that such a request is premature. Further, Rollingwood asserts that it has equity in the property and that the property is necessary for an effective reorganization. In support of its request to use cash collateral, Rollingwood argues that while Freddie Mac may have a valid security interest in the rents generated by the property, Rollingwood owns these rents.

Freddie Mac contends that Rollingwood has no equity in the property and that Rollingwood's ability to effectively reorganize necessarily depends upon its ability to use its rents. Under Fla.Stat. § 697.07 and the assignment of rents provision, Freddie Mac argues that upon default and notice, ownership rights in the rents vested with Freddie Mac. Thus, Freddie Mac concludes that Rollingwood has no rights in the rents and cannot reorganize. Alternatively, Freddie Mac maintains that even with the use of its rents, Rollingwood cannot service its debt and, thus, relief from stay is warranted.

## III. *Issues Presented for Determination*

1. Under Fla.Stat. § 697.07 what are the respective rights of Rollingwood and Freddie Mac in the rents?

2. Is Freddie Mac entitled to relief from stay under 11 U.S.C. § 362(d)(1) for lack of adequate protection and/or under 11 U.S.C. § 362(d) because Rollingwood lacks equity in the property and the property is not necessary for an effective reorganization?

3. If relief from stay is denied, is Rollingwood entitled to use the rents to pay the necessary and ordinary operating expenses to maintain its property?

## IV. *Discussion and Legal Conclusions*

The Court recognizes that resolution of the "Florida rents issue" is crucial to the other issues raised by Freddie Mac. Thus, prior to addressing the relief from stay motion, the Court will determine the respective rights of the parties in the rents.

### A. The Rights of the Parties in the Rents Under Applicable Florida Law.

The dispute between the parties regarding the rents revolves around the par-

ties' agreement and Fla.Stat. § 697.07. The assignment of rents provision provides:

26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues, including all security deposits, of the Project, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Project, regardless of to whom the rents and revenues of the Project are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Project to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Project as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Project in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Project as specified in this paragraph as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. . . .

\* \* \* \* \* \*

This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

Fla.Stat. § 697.07 provides:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

Since this Court first interpreted this statute in September 1990, the case law under Fla.Stat. § 697.07 has evolved significantly. *In re Cardinal Industries Inc.*, 118 B.R. 971 (Bankr.S.D.Ohio 1990). ("Thymewood I") Two divergent views have emerged in the Federal Courts regarding the appropriate interpretation of Fla.Stat. § 697.07. Some courts have interpreted this provision as a substantive change in Florida rent assignment law. This view concludes that Fla.Stat. § 697.07 allows parties to agree that ownership rights in rents may be transferred to a mortgagee upon the mortgagor's default and notice of that default. *See, In re Thymewood Apartments Ltd.*, ("Thymewood II") 123 B.R. 969 (S.D.Ohio 1991) [1];

*In re 163rd Street Mini Storage, Inc.,* 113 B.R. 87 (Bankr.S.D.Fla.1990) and *In re Camelot Associates Ltd.,* 102 B.R. 161 (Bankr.D.Minn.1989).

On the other hand, other federal courts have interpreted Fla.Stat. § 697.07 as merely changing the procedure by which a mortgagee enforces its security interest in rents. Under this view Fla.Stat. § 697.07 does not change Florida's substantive law and does not authorize the grant of anything more than a security interest in rents. *See, In re Aloma Square, Inc.,* 85 B.R. 623 (Bankr.M.D.Fla.1988) *aff'd,* 116 B.R. 827 (M.D.Fla.1990); *In re Growers Properties No. 56 Ltd.,* 117 B.R. 1015 (Bankr.M.D.Fla.1990); and *In re One Fourth Street North, Ltd.,* 103 B.R. 320 (Bankr.M.D.1989).[2]

Unlike the federal courts, the Florida appellate courts have not split on the proper interpretation of their statute. To date two Florida state appellate level courts have followed the *Aloma Square* line of decisions holding that Fla.Stat. § 697.07 merely changed the procedure for enforcing security interests in rents. *See Nassau Square Associates, Ltd. v. Insurance Commissioner of the State of Calif.,* 579 So.2d 259 (Fla.Dist.Ct.App.1991) and *Oakbrooke Associates Ltd. v. Insurance Commissioner of the State of Calif.,* 581 So.2d 943 (Fla.App.1991). These decisions support this Court's initial conclusion in Thymewood I that while a mortgagee may have a valid security interest in rents, the mortgagor retains ownership rights to those rents.

Although not addressing the issue directly, the Florida Supreme Court has indicated Fla.Stat. § 697.07 merely changes procedural, not substantive law. *Haven Federal Savings & Loan Associates v. Kirian,* 579 So.2d 730 (Fla.1991). The court stated the following regarding the apparent purpose of Fla.Stat. § 697.07 and related provisions: "that legislation amended §§ 697.07 ... to create a simple, equitable, and inexpensive method by which a mortgage lender could enforce an assignment of rents contract." *Haven,* at 733, fnt. 1.

This Court believes that the Florida state courts are in a better position to ascertain the purpose of Fla.Stat. § 697.07. The interpretation given that statute by the Florida courts logically follows the history of rent assignments as security interests only. *See, Carolina Portland Cement Co. v. Baumgartner,* 99 Fla. 987, 128 So. 241 (1930), and *White v. Anthony Investment Co.,* 119 Fla. 108, 160 So. 881 (1935). While this conclusion differs from the District Judge's holding in *Thymewood II* and this Court's opinion on remand in *Thymewood III,* that change is warranted by the intervening decisions of the Florida state courts and the absence of any law-of-the-case requirement in the case now before this Court.

Portions of Freddie Mac's argument relate to this Court's analysis on remand in *Thymewood III* that Fla.Stat. § 697.07 may permit parties to agree to something more than a security interest in rents. That interpretation resulted from the law-of-the-case posture of the decision in that matter. Although the Court has decided not to incorporate *Thymewood II* or *Thymewood III* in subsequent cases,[3] questions remain about the interplay of these court decisions in the Cardinal bankruptcy proceedings. Accordingly, to avoid further confusion the Court will attempt to address all of Freddie Mac's contentions in this case.

Freddie Mac recently filed a supplemental memorandum in opposition to Rollingwood's request to use cash collateral. This memorandum challenges the Court's con-

---

**1.** This Court followed the law-of-the-case in the District Judge's remand in *Thymewood II* and concluded that if Fla.Stat. § 697.07 is interpreted as a substantive change in Florida rent assignment law, that section cannot be retroactively applied. *In re Thymewood Apartments Ltd.,* 129 B.R. 505 (Bankr.S.D.Ohio 1991) ("*Thymewood III*").

**2.** For a comparison of these different views *see In re Franklin Pembroke Venture II,* 105 B.R. 276 (Bankr.E.D.Pa.1989).

**3.** Recently this Court specifically rejected *Thymewood III* because of these intervening decisions by Florida state courts. *See, In re California Gardens Apartments Ltd.,* 130 B.R. 509 (Bankr.S.D.Ohio 1991).

clusion in *Thymewood III* that Fla.Stat. § 697.07, when interpreted as a substantive change in Florida rent assignment law, cannot be applied retroactively. Freddie Mac contends that former Fla.Stat. § 665.0731(4) allowed parties to agree to a transfer of absolute ownership rights in the rents to the mortgagee upon the mortgagor's default. Thus, Freddie Mac concludes that Fla.Stat. § 697.07 did not alter this already existing law and, therefore, could be applied retroactively to agreements entered into before the effective date of Fla.Stat. § 697.07.

This Court in *Thymewood III* fully addressed Freddie Mac's arguments relating to Fla.Stat. § 665.0731(4). The Court analyzed retroactive application in light of the substantive change in Florida rent assignment law found by the District Judge in *Thymewood II*. After a review of Florida common law on rent assignments, the Court concluded that Fla.Stat. § 665.0731(4) did not alter existing common law. Additionally, the Court believes that Fla. Stat. § 665.0731(4) was nothing more than a procedural mechanism to enforce a security interest in rents. That statute gave a mortgagee a right to possess the rents earlier than common law had permitted. *See, Carolina Portland Cement Co.*, 128 So. at 244, and *White*, 160 So. at 882, for a discussion of Florida common law on rent assignments. The Florida courts apparently ignored this provision, however, and it seemed presumptuous for this Court to expound on the meaning of a statute which the courts of that state had ignored. Moreover, the District Judge concluded in *Thymewood II* that Fla.Stat. § 697.07 permits parties to agree to something more than a security interest in rents and, thereby, effectuated a change in the substantive law of Florida.

Retroactive application of Fla.Stat. § 697.07 is not an issue, however, when that section is interpreted only as a procedural change, as it has been by the Florida

state courts and by this Court following *Thymewood III*.[4] Florida law clearly provides that statutes which are merely remedial or procedural may be retroactively applied. *See, Pinnellas County v. Banks*, 154 Fla. 582, 19 So.2d 1, 3 (1944). Thus, when Fla.Stat. § 697.07 is interpreted only as a procedural change in the enforcement of a mortgagee's security interest in rents, it may be applied retroactively, and may apply to Freddie Mac's security interest in Rollingwood's rents. The result, however, only gives Freddie Mac, as mortgagee, earlier control of the rents.

Accordingly, this Court again concludes that Fla.Stat. § 697.07 merely changes the procedure for enforcing a security interest in rents. Ownership rights are not transferred to the mortgagee upon the mortgagor's default. Thus, Rollingwood maintains the ownership interests in its rents and Freddie Mac holds a security interest in those rents.

B. Motion for Relief from Stay.

11 U.S.C. § 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

1. *Relief Under § 362(d)(1).*

A portion of Freddie Mac's requested relief under 11 U.S.C. § 362(d)(1) relates to the "Florida rents issue." Freddie Mac contends that under Fla.Stat. § 697.07 and the parties' agreement it owns the rents

---

**4.** Arguably, Fla.Stat. § 697.07 does not even change the procedure of enforcing security interests in rents because Fla.Stat. § 665.0731(4) appears to have already changed that procedure.

However, as recognized by this Court in *Thymewood III*, the Florida courts apparently were not giving mortgagees the benefits of this quicker procedure.

and Rollingwood is not entitled to use them. Thus, Freddie Mac argues that cause exists to lift the stay. However, the Court has concluded that Fla.Stat. § 697.07 does not authorize or establish a transfer of ownership rights in the rents. Therefore, Freddie Mac cannot show cause for relief from stay using the "Florida rents issue."

■ Connected with this argument, Freddie Mac also contends that it lacks adequate protection for its ownership rights in the rents. Freddie Mac does not have an ownership interest in the. rents, however. Rather, Freddie Mac has a security interest in the net rents remaining after the ordinary and necessary expenses to .maintain the property have been paid. *See, In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138 (Bankr. S.D.Ohio 1990). Even if Freddie Mac's security "interest attaches to the Gross Rents, the Debtor's use of such Rents to maintain and manage the Property, preserve its value and produce net Rents provides adequate protection for [Freddie Mac's] interest." *Willowood* at 143.

Freddie Mac did not produce evidence that the value of the property had declined in value since the filing of the Chapter 11 petition. Therefore, Freddie Mac has failed to establish a lack of adequate protection as cause for relief from stay. *See, In re North Indianapolis Venture*, 113 B.R. 386, 388 (Bankr.S.D.Ohio 1990) and *In re Willowood East Apartments of Indianapolis II, Ltd.*, 113 B.R. 392, 394 (Bankr. S.D.Ohio 1990). The motion for relief from stay under 11 U.S.C. § 362(d)(1) is therefore denied.

### 2. Relief Under § 362(d)(2).

Under § 362(d)(2), a movant must establish that a debtor lacks equity in the property. 11 U.S.C. § 362(g)(1). The burden then shifts to the debtor to show that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g)(2).

Both parties presented evidence of the property's value. An appraiser for Freddie Mac estimated the value as $1,250,000. (Tr. 19) Rollingwood's witness placed the value at $1,312,666. (Tr. 39) The parties

have stipulated the payoff under the note is $1,301,345.73.

The testimony of Freddie Mac's appraiser was credible and his background included previous appraisals of Cardinal properties. He used the three standard methods, replacement cost, market and income to arrive at his estimated fair market value.

■ Even if every representation by Rollingwood is taken as accurate, any excess of fair market value over the payoff is too small to constitute meaningful equity. Rollingwood's own evidence suggests that for every dollar increase in income, there is a corresponding $10.00 increase in value. Likewise, the reverse is also true. Thus, $1,200 less net operating income in 1991 would reduce the value by $12,000.

The Court finds that the fair market value of the property is between $1,250,000 and $1,312,666. The Court further finds that such small potential equity in the property does not warrant a finding that Rollingwood has equity in the property. Thus, Freddie Mac has sustained its burden of proof with respect to that issue.

■ The second prong for relief under § 362(d)(2) requires the debtor to show that the property is necessary for an effective reorganization. This requires more than a showing that the property is necessary; an effective reorganization must be reasonably possible. *See, United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). This Court follows a two-prong test to determine whether a debtor has made this showing: (1) there must be a showing of a reasonable possibility of a successful reorganization and (2) this showing must come within a reasonable time. See, *In re Ashgrove Apartments of DeKalb County, Ltd.*, 121 B.R. 752 (Bankr.S.D.Ohio 1990).

■ In *Ashgrove* and other Cardinal related partnership cases the Court has required a debtor to establish that it is "moving meaningfully" toward a plan of reorganization. The showing must be stronger as the case ages or if the financial

information shows a marginal operation. 121 B.R. at 756. If a debtor establishes that it is "moving meaningfully" toward a plan of reorganization, the Court will determine whether that showing has come within a reasonable time. Relevant factors of reasonable time include: the age of the case, the presence or absence of good faith negotiations between the parties and the length of time since the expiration of the exclusivity period. *Ashgrove* 121 B.R. at 757, and *In re Northgate Terrace Apartments Ltd.*, 126 B.R. 520 (Bankr.S.D.Ohio 1991).

■ Rollingwood filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 22, 1991. The Court heard Freddie Mac's motion for relief from the stay on April 30, 1991. Hence, Rollingwood's exclusive period to file a plan of reorganization had yet to expire.

Freddie Mac contends that Rollingwood's poor performance in 1990, when compared to its projections for that year, means this debtor cannot show a reasonable possibility of a successful reorganization. While Freddie Mac accurately describes Rollingwood's performance in 1990, the evidence showed that Rollingwood has performed ahead of its projections in 1991. The Court has also reviewed Rollingwood's operating reports through June 1991. Except for one month, Rollingwood has shown a net operating income capable of servicing Freddie Mac's debt.

The Court finds that although the possibility of reorganization is uncertain for this property, Rollingwood has met the standard of proof required at this stage of its case under 11 U.S.C. § 362(d)(2) and the applicable case law. Given the newness of this case and the recent significant improvement in operations, relief from stay under § 362(d)(2) is not warranted at this time.

### V. *Cash Collateral*

■ The final matter before the Court is Rollingwood's motion for the use of cash collateral. Rollingwood contends that, although Freddie Mac has a valid security interest in the rents, under this Court's previous rulings, Rollingwood may use those rents to pay the normal operating expenses of the property. Freddie Mac contends that the rents are not property of Rollingwood and, thus, are cash collateral. This conclusion is based upon Freddie Mac's arguments under Fla.Stat. § 697.07.

This Court has determined that ownership rights to the rents did not transfer to Freddie Mac upon Rollingwood's default under Fla.Stat. § 697.07. Rather that section merely affords the mortgagee with a security interest in rents a quick and efficient procedure to take possession of the rents. Therefore, the rents are property of Rollingwood's estate. That property is subject to Freddie Mac's security interest and, thus, the rents are cash collateral.

■ Consistent with prior opinions the Court finds that the rents may be used to pay the ordinary and necessary operating expenses of the property. See, *In re Willowood Apartments of Indianapolis II Ltd.*, 114 B.R. 138 (Bankr.S.D.Ohio 1990). Rollingwood may not use the net rents (those remaining after the payment of reasonable expenses), however, without Freddie Mac's consent or without providing Freddie Mac with adequate protection. Usage of the gross rents to maintain the property was always contemplated by the parties and is a form of adequate protection to preserve the value of the property in which Freddie Mac has a security interest. *Willowood*, 114 B.R. at 143.

### VI. *Conclusion*

Based upon the foregoing, the Court finds that Freddie Mac has a security interest in the rents, but Rollingwood owns those rents. Further, Rollingwood demonstrated that it is moving meaningfully toward a plan of reorganization and that success of that plan is a reasonable possibility. Accordingly, Freddie Mac's motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (2) is denied. Rollingwood is also entitled to use the gross rents from the property to pay reasonable,

necessary and ordinary expenses of maintaining the property.

IT IS SO ORDERED.