**In re Thomas Hee CHO and Kil Ja Cho, Debtors.**

**Samuel W. STEELE and Carol J. Steele, Plaintiffs,**

v.

**Thomas Hee CHO and Kil Ja Cho, Defendants.**

**Bankruptcy No. 93–31608–S.**
**Contested Matter No. 93–972.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 4, 1994.

Gary M. Nuckols, Durrette, Irvine, Lemons & Federson, Fredericksburg, VA, for plaintiffs.

Elizabeth Munro, O'Connell & Mayhugh, P.C., Warrenton, VA, for debtors/defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on a motion for relief from stay filed September 24, 1993, and an answer thereto. Samuel W. Steele and Carol J. Steele ("The Steeles") bring this action under 11 U.S.C. § 362. This Court has jurisdiction of this Contested Matter pursuant to 28 U.S.C. § 1334 and § 157. This is a core matter and this Court may enter final judgment therein.

### Findings of Fact

This is substantially a single asset Chapter 11, the debtors, Thomas Hee Cho and Kil Ja

Cho, ("The Debtors") being the owners and operators of a motel and restaurant on a 3.481 acre parcel of land in King George County, Virginia. The Debtors filed a Chapter 11 proceeding on April 14, 1993, three days before the scheduled foreclosure sale under the Steeles' deed of trust.

The Steeles have asked the Court to grant relief from the protection afforded by 11 U.S.C. § 362 and argues that the debtor has no equity in the property and it is not necessary for an effective reorganization of the debtor. They have also asked that relief be granted for cause including the lack of adequate protection of their interest in the property.

The property is currently appraised at $530,000 and is subject to a first lien deed of trust securing a note held by the Steeles and assumed by debtors at the time of their acquisition of the property and having an unpaid principal balance and interest to the date of filing of the Chapter 11 petition amounting to $506,202. The note bears an interest rate of 11% and has been in default for several years.[1] Since the time of filing of the bankruptcy petition, $35,000 in unpaid interest has accrued on the note, except to the extent that the debtor has made periodic monthly payments of $3800 in the months of September, October, November, and December for a total of $15,200. At the time of this hearing on December 20, 1993, the unpaid principal balance and accrued interest amounted to $526,787.20. The last several monthly payments are not sufficient in amount to reduce the principal of the loan and only partially offsets the interest accruing on the indebtedness.

The real estate is also security for a note made by the debtors and held by Paul D. Kang and his wife ("The Kangs"), who were the former owners of the property and makers of the note secured by the first deed of trust. The note held by the Kangs is in the amount of approximately $246,000 and also has been in default with no payments having been made for several years.

The parties agree and the Court finds that the debtors have no equity in the real estate subject to this motion for relief from stay. The Court further finds that at the time of filing there was an equity cushion entitling the first lien noteholder to adequate protection payments and because of the post petition payments there still remains a slight equity cushion protecting the Steeles note. The Court further finds that the Kangs are substantially, if not completely, an undersecured creditor.

*Conclusions of Law*

11 U.S.C. § 362(d) provides as follows:

On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of the section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

It is the plaintiff's burden to show that the debtors have no equity in the property and the burden of all other issues rest upon the debtors. 11 U.S.C. § 362(g).

The evidence reflects that the debtor has been in default for several years; the payments being delinquent on the first note for about four years and on the second note for about six years. The balance due on the first note when compared with the appraisal value would indicate that some small equity, in excess of the amount due on the first lien note, still exists in said real estate due to the post-petition payments currently being made by debtors to the Steeles. These payments do not constitute adequate protection because the equity cushion continues to decline

---

1. At the time of the filing of the petition, the debtors were in default for five monthly payments and no post-petition payments had been made prior to the filing of this motion for relief from stay.

and the Steeles will soon be in a posture of an undersecured creditor. Although not a party to this motion, the interest, if any, of the second noteholder, the Kangs, in the real estate, small as it may be, is likewise eroding or non-existent. Although the Kangs are not entitled to adequate protection payments according to the dictates of *United Sav. Ass'n of Texas v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), this would not of itself preclude their requesting a relief from the stay pursuant to 11 U.S.C. § 362(d)(2).

██ Though there is no dispute about the debtors' lack of equity in the real estate, the debtors contend the property is necessary for an effective reorganization and the viability of any plan should be reserved for a confirmation hearing. In determining if the property is essential for an effective reorganization, the court must preliminarily find that the reorganization is "in prospect", which means that there must be a reasonable possibility of a successful reorganization within a reasonable time. *Timbers*, 484 U.S. at 376, 108 S.Ct. at 633. The difference between an analysis of 11 U.S.C. § 362(d)(2) as opposed to a 11 U.S.C. § 1129 confirmation hearing was outlined in *Edgewater Walk Apartments v. Mony Life Insurance Company of America*, 162 B.R. 490 (N.D.Ill.1993). There, Judge Plunkett stated: "[t]o show that the property is necessary for an effective reorganization the debtor bears the burden of proof of establishing; [sic] one, that the property is necessary to its reorganization efforts; and two, there's a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 495. The Court continued its study of the interplay between both sections when it stated:

> To be "effective [2]," a plan must be confirmable. To be confirmable, specific requirements must be met. (See 11 U.S.C. § 1129 (1993)). As a result, in order to assess whether a debtor has met its burden under sections 362(d)(2) and 362(g), a bankruptcy court must weigh the evidence presented against the standards imposed by section 1129 to determine whether the

threshold requirements of that section can be met.

*Id.* at 498.

██ It is true that a 11 U.S.C. § 1129 analysis is premature; however, it can provide guidance in analyzing the feasibility of a plan. If the plan proposed cannot meet confirmation standards, it cannot form the basis for finding there to be a reasonable possibility of a successful reorganization as required by 11 U.S.C. § 362(d)(2). In considering the evidentiary burden of the debtors, the cases intimate a lesser burden during the exclusivity period and a greater burden in the later stages. *Timbers*, 484 U.S. at 376, 108 S.Ct. at 633.

██ This case, filed on April 14, 1993, involves substantially a single asset, a motel and restaurant, owned by individual debtors. The exclusivity period for filing a plan and disclosure statement expired August 12, 1993. This motion for relief from stay imposed by 11 U.S.C. § 362 was filed September 24, 1993. The debtors' plan was filed on September 29, 1993. The initial hearing on the disclosure statement and the final hearing on this motion for relief were heard on December 20, 1993. The Court declined to approve the disclosure statement finding it required modification as does the proposed plan of reorganization. Even with proposed modifications suggested by the debtors, the Steeles have testified they will vote against the plan and object to its confirmation. The Kangs, who are largely, if not completely, unsecured are treated as unsecured creditors and are separately classed from the other general unsecured creditors none of whom have debts in excess of $500.00 and who were to be paid 90% of their debt at confirmation according to the plan and disclosure presently before the Court. The Kangs' debt according to the plan will be satisfied out of the recovery of monies, if any, from a suit instituted by the debtors against a third party. Mr. Kang has testified that they will object to the classification of their claim at the confirmation hearing and will vote against the plan or subsequent modifications thereof. The Steeles and the Kangs argue that the

---

**2.** The Court is of course referring to the requirements of 11 U.S.C. § 362(d)(2)(B).

Kangs' classification is improper because it is an unfair classification and will doom the confirmation hearing. If the plan is amended to include the Kangs' in the same class as the other general unsecured creditors Mr. Kang testified they would still object to confirmation and vote against the plan and preclude the debtors from getting an affirmative vote of an impaired class.

If the $500 class was paid at confirmation there would be no non-insider impaired classes other than the Steeles and the Kangs. It is clear from the debtors' proposed plan that an objection to confirmation should be sustained because of the obvious unfair classification of the Kangs' claim coupled with the minute impairment of other unsecured creditors to assure their affirmative vote.[3] If the Kangs were included in the class of general unsecured creditors, their negative vote would control the class and the plan would be violative of 11 U.S.C. § 1129(a)(10) because of the absence of an affirmative vote of an impaired non-insider class and thus unconfirmable.[4]

The debtors cite two cases, *In re Rollingwood Apartments*, 133 B.R. 906 (Bankr. S.D.Ohio 1991) and *In re Ledgemere Land Corp.*, 125 B.R. 58 (Bankr.Mass.1991) to support their position that the plaintiff's motion for relief should not be granted. Although both cases seem to support the test set out in *Timbers, supra*, they reach a different conclusion. In addition, both cases are distinguishable from the instant case. In *Rollingwood*, the debtor's exclusivity period had not

yet expired when a creditor made its motion for relief from the automatic stay and the debtor also showed that it had a net operating income capable of servicing the secured creditor's debt. *Rollingwood*, 133 B.R. at 913. In the instant case, the exclusivity period ended in August of this year approximately a month before the Steeles made their motion for relief from stay on September 24, 1993. In addition, while the debtors have shown that operating revenues[5] will generate some payments, these payments will not even cover accruing interest. In *Ledgemere*, the debtor offered to make a substantial adequate protection payment. *Ledgemere*, 125 B.R. at 62. Again, in the instant case the debtors have made no offer of substantial adequate protection payments, instead they have merely agreed to make post-petition payments from operating revenue in an amount less than accruing interest.

It is clear to the Court that 11 U.S.C. § 362(d)(2)(B) imposes on the debtor the duty to show by a preponderance of the evidence that the property subject to the relief motion is necessary to an effective reorganization. Courts have construed this to mean that there must exist the likelihood of a confirmed plan within a reasonable time. *See In re Victor Foods*, 102 B.R. 727, 729 (Bankr.E.D.Mo.1989).

It is the debtors' patent inability to adequately protect the equity cushion of the Steeles, in addition to the cumulative effect of a filing to thwart an immediate foreclosure

3. According to the proposed disclosure statement this class consists of three creditors, all of whom are under $500 and will be paid 90% cash in full payment upon confirmation. This class does not fit the test of an administrative convenience class prescribed by 11 U.S.C. § 1122(b), and as such they cannot be separately classified on that basis. The debtor now indicates that this class will be paid 100% of its claims. As such, it became unimpaired and is not entitled a vote, and for reasons stated herein, the plan becomes nonconfirmable because of the lack of an affirmative vote of an impaired class.

4. Attempts at gerrymandering claims in order to obtain a confirmable plan have been severely dealt with in the past. *See Fairfield Executive Associates v. Hyperion Credit Capital Partners, L.P. (In re Fairfield Executive Associates)*, 161 B.R. 595 (D.N.J.1993), where the district court

found that where a debtor gerrymanders the claims in a reorganization plan in an attempt to improperly employ the cramdown method of confirmation, the objecting undersecured creditor is entitled to relief from stay.

5. The financial prospects for the Chos' motel and restaurant are unclear. On cross examination, Mr. Steele testified that Dahlgren Naval Weapons Laboratory, on which the Chos' restaurant heavily depends for business, is not on the Federal Government's base closure list. In fact, Mr. Steele testified that the base may even be expanded in the future. However, it is unclear when this proposed expansion will occur come or how it will effect the restaurant's business.

Mr. Cho also testified that business is better this year than it was last year but offered no real insight as to how it is better or the future growth of his operations.

of the property in a single asset Chapter 11 proceeding, the eroding equity in the Steeles' collateral, the lack of any equity the debtors have in the single asset, and the obvious inability, considering the recalcitrance of the principle creditors and the financial condition of the debtor, to effectively reorganize [6] within in a reasonable time, that leads this Court to determine that the relief requested should be granted pursuant to 11 U.S.C. § 362(d)(1) & (2).

---

**6.** Because of the disparate treatment of the Kang's as an unsecured creditor in relation to the other unsecured creditors, confirmation would also be unattainable due to the fact that 11 U.S.C. § 1129(b)(1) allows confirmation only "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

If the plan says that a class is to receive a 90% payment on its claims at confirmation rather than a full 100% at confirmation, it becomes more evident that it is not fair and equitable to a dissenting class to override their dissent by *arranging* for an impaired class solely to get the affirmative vote of that impaired class. Although it may be argued that this is an issue for a hearing on confirmation of a plan, this Court believes that the matter is not proscribed from the Court's consideration if it involves the likelihood of an inability to effective reorganization within a reasonable time. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest*, 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) and 11 U.S.C. § 1112(b)(2). If the payment is 100% at confirmation, then the class is unimpaired and the effect is to have a plan opposed by the remaining impaired classes, as the evidence discloses, which violates 11 U.S.C. § 1129(a)(10) and precludes confirmation due to the conditions imposed in 11 U.S.C. § 1129(b)(1).